RECEIVED
IN LAKE CHARLES, LA
AUG 21 2012
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | DOCKET NO. 2:11cr00112-001 |
| VS. | : | JUDGE MINALDI |
| CRAIG MICHAEL NASH | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court are objections by the Government and by the defendant to the Presentence Report ("PSR") prepared by the Probation Department.

The Government argues that there should be an additional two point assessment pursuant to USSG §2B1.1(b)(9)(C) which states that: "If the offense involved...(C) a violation of any prior, specific or administrative order, injunction, decree or process not addressed elsewhere in the guidelines...increase by 2 levels."

Application note (7)(C) states:

(C) <u>Fraud in Contravention of Prior Judicial Order</u>.--Subsection (b)(9)(C) provides an enhancement if the defendant commits a fraud in contravention of a prior, official judicial or administrative warning, in the form of an order, injunction, decree, or process, to take or not to take a specified action. A defendant who does not comply with such a prior, official judicial or administrative warning demonstrates aggravated criminal intent and deserves additional punishment. If it is established that an entity the defendant controlled was a party to the prior proceeding that resulted in the official judicial or administrative action, and the defendant had knowledge of that prior decree or order, this enhancement applies even if the defendant was not a specifically named party in that prior case. For example, a defendant whose business previously was enjoined from selling a dangerous product, but who nonetheless engaged in fraudulent conduct to sell the product, is subject to this enhancement. This enhancement does not apply if the same conduct resulted in an enhancement pursuant to a provision found elsewhere in the guidelines ( <u>e.g.</u> , a violation of a

condition of release addressed in §3C1.3 (Commission of Offense While on Release) or a violation of probation addressed in §4A1.1 (Criminal History Category)). USSG § 2B1.1 (11/1/11).

The Fifth Circuit discussed whether violating a cease and desist order from the Texas Board of Orthotics & Prosthetics qualified as an "act or omission" for purposes of the Guidelines in *United States v. Garcia,* 432 Fed.App'x. 318, 329-330, (5th Cir. 2011). The Fifth Circuit found that other circuit courts had only imposed "the enhancement after a meaningful negotiation or interaction led the agency to issue a directive that the defendant subsequently violated." *United States v. Goldberg,* 538 F.3d 280, 291 (3d Cir.2008); *see also United States v. Malol,* 476 F.3d 1283, 1293–94 (11th Cir.2007); *United States v. Mantas,* 274 F.3d 1127, 1132–33 (7th Cir.2001); *United States v. Spencer,* 129 F.3d 246, 252 (2d Cir.1997). Federal circuit courts have not permitted application of the sentencing enhancement "to every situation where 'a defendant knew or was told by someone in authority that what she was doing was illegal.'" *United States v. Wallace,* 355 F.3d 1095, 1097–98 (7th Cir.2004) (quoting *United States v. Linville,* 10 F.3d 630, 632–33 (9th Cir.1993)). Rather, a district court's application of the enhancement was only affirmed when the notice, order, or judgment stemmed from an "interaction between the agency and defendant that allowed the defendant to participate in some meaningful way ... and that led to a definite result." *Goldberg,* 538 F.3d at 291. As the Ninth Circuit noted, "the Sentencing Commission did not intend to subject every recipient of relatively informal missives and official notifications and warnings of violations from administrative agencies to the extra penalties designed for people with aggravated criminal intent." *Linville,* 10 F.3d at 633 (internal citations and quotations omitted).

In the instant case, the Food Nutrition Service ("FNS") Retailer Investigative Branch ("RIB") determined that Goodfellas, the store owned by Nash, had previously violated the federal

Supplemental Nutrition Assistance Program ("SNAP") by exchanging benefits for ineligible items from January 17, 2007 until April 3, 2007. On July 9, 2008, in lieu of a six month disqualification period, Goodfellas was assessed a civil money penalty of $14,742.00. Nash acknowledged this violation and agreed to pay the penalty. The Government asserts that this penalty was, at a minimum, an administrative warning which Nash violated in the commission of this fraud.

After reviewing the USDA letters dated July 1, 2008 and July 9, 2008, the court finds that the two level enhancement should apply. The administrative warning issued in 2008 arose from a negotiation which allowed the defendant to participate in a meaningful way and it led to a definite result, a fine rather than a suspension from the program.

The Government next argues that the defendant should be assessed an additional two points for abuse of trust. The Sentencing Guidelines provide for a two level increase to a defendant's offense level in cases where the court finds that the "defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. In reviewing an abuse-of-trust determination, the court must determine whether the defendant occupied a position of trust and whether he abused his position "in a manner that significantly facilitated the commission or concealment of the offense." *United States v. Kay,* 513 F.3d 432, 459 (5th Cir.2007) (defining "significant facilitation" as "whether the defendant occupied a superior position, relative to all people in a position to commit the offense, as a result of [his] job") (citation omitted).

In *United States v. Hale,* 685 F.3d 522, 546 (5th Cir. 2012), at sentencing, the district court adopted the presentence investigation report (PSR) which, like the evidence at trial, provided that Hale was a patrol officer working for the Laredo Police Department when he became involved in the

cocaine escort scheme. Police officers hold positions of public trust. *See United States v. Deville*, 278 F.3d 500, 508 (5th Cir. 2002). The PSR and trial evidence also depicted how Hale and his co-conspirators agreed to use police radios to monitor police frequencies in order to detect whether an escort was under surveillance and whether there was a dispatch related to the escorts. The court held that this evidence was sufficient to establish that Hale abused his position as a police officer to better facilitate and conceal the cocaine escort conspiracy. *See also United States v. Guerra*, 463 Fed.App'x. 451, 2012 WL 739413 (5th Cir. 2012).

In *United States v. Isiwele*, 635 F.3d 196, 198 (5th Cir. 2011), Enitan Isiwele was the owner of a durable medical equipment ("DME") supply company called Galaxy Medical Supply ("Galaxy"), which was a supplier to both Medicare and Medicaid. In an effort to meet urgent medical needs in the wake of Hurricanes Katrina and Rita, Medicare eliminated certain documentary requirements for the replacement of any power wheelchairs lost or damaged in those hurricanes. This waiver applied only to beneficiaries who had already met the requirements for a doctor's prescription and Certificate of Medical Necessity before obtaining their original power wheelchairs. Galaxy used this waiver to bill Medicare and Medicaid a total of $587,382.65 for power wheelchairs and related accessories, and was reimbursed a total of $297,381.04. As a result, Isiwele was tried on sixteen counts of health care fraud.

On appeal, the court held that "pursuant to clear Fifth Circuit precedent, the district court applied a two-level 'abuse of trust' enhancement to Isiwele's offense level under U.S.S.G. § 3B1.3 because Isiwele's status as a DME supplier placed him in a relationship of trust with Medicare/Medicaid." *See United States v. Miller*, 607 F.3d 144, 148–50 (5th Cir. 2010). Isiwele argued that he was not in a relationship of trust with Medicare/Medicaid solely to preserve the

argument for further review. The court summarily affirmed the enhancement.

Nash was the owner and manager of Goodfellas. He was not supervised by anyone. The SNAP program, and FNS, cannot monitor, police and regulate all food stamp transcations all day, every day. As argued by the government, the program relies on a certain level of trust with retailers like Goodfellas. Once the store is inspected and approved, the SNAP program relies on the retailer to submit truthful and accurate information for reimbursement. The government asserts that if the SNAP program monitored and challenged every transaction, it would have a chilling effect on disbursement of these funds which are used to feed hungry families nationwide. Nash was in a position of trust.

Nash abused his position in a manner that significantly facilitated the commission or concealment of the offense. U.S.S.G. §3B1.3. His position enabled him to be in a better position to use, transfer, acquire and possess food stamp coupons, benefits, authorization cards and access devices. Because he was the owner/manager, and had little or no accountability, his position significantly facilitated the concealment of the offense. A two point enhancement is warranted.

The defendant also objects to the two level enhancement in ¶30 of the PSR. The base offense level was increased by two levels for Nash's role as an organizer, leader, manager or supervisor.[1]

---

[1] (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by two levels. USSG, §3B1.1, 18 U.S.C.A.
The defendant must be the organizer or leader of at least one other participant in the crime and assert control over at least that one participant. United States v. Jobe, 101 F.3d 1046, 1064 (5th Cir.1996). The enhancement is not appropriate but an upward departure is warranted when the defendant is one who "did not organize, lead, manage or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization." U.S.S.G. § 3B1.1, Application Note 2. Because the district court made an upward adjustment, rather than an upward departure, the facts must show that Bautista managed or supervised participants rather than property. United States v. Bautista 2002 WL 31845830, 1 (5th Cir. ,2002); United States v. Giraldo, 111 F.3d 21, 23 (5th Cir.1997)(citing United States v. Jobe, 101 F.3d 1046 (5th Cir.1996)).

Nash argues that simply because he owned the store and he was aware of his employees engaging in fraudulent food stamp transactions does not mean that he organized, led, managed, or supervised them in these illegal activities.

The defendant was the owner of the store and supervised other employees, mainly his brother and sister. He admits that he knew of the food stamp trafficking. The defendant's sister gave a statement in which she stated that the defendant explained to her how to exchange food stamp benefits for cash, and he instructed her to give $10.00 for $20.00 in benefits.

The evidence contained in the PSR supports a two level enhancement for Nash's role as a leader, manager, or supervisor.

Accordingly, for the reasons set forth herein, Nash's total offense level is 26. With a Criminal History Category of I, his guideline range is 60 months on Count 1 and 63-78 months on Count 18.

Lake Charles, Louisiana, this ___ day of August, 2012.

Patricia Minaldi
United States District Court